UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
JOHN ANGSTADT, M.D.; WEN-TING CHAO, M.D.;
SPENCER HOLOVER, M.D.; NIKHILESH SEKHAR,
M.D.; SHAWN GARBER, M.D.; and ERIK SOMMER,
M.D., doing business as New York Bariatric Group,

                                        Plaintiffs,

        -against-

EMPIRE HEALTHCHOICE HMO, INC., and EMPIRE
HEALTHCHOICE ASSURANCE, INC.,

                                        Defendants.
----------------------------------------------------------------------X

**FILED**
**CLERK**

4:25 pm, Mar 16, 2017

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**ORDER**
15-CV-1823 (SJF)(AYS)

FEUERSTEIN, District Judge:

        Pending before the Court are the parties' objections to the Report and Recommendation

of the Honorable Anne Y. Shields, United States Magistrate Judge, dated January 6, 2017 ("the

Report"), recommending that the motion of defendants Empire HealthChoice HMO, Inc. and

Empire HealthChoice Assurance, Inc. (collectively, "defendants") to dismiss the claims of

plaintiffs John Angstadt, M.D.; Wen-Ting Chao, M.D.; Shawn Garber, M.D.; Spencer Holover,

M.D.; Nikhilesh Sekhar, M.D. and Erik Sommer, M.D., doing business as New York Bariatric

Group (collectively, "plaintiffs") against them pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure be granted in part and denied in part.  For the reasons stated herein, Magistrate

Judge Shields's Report is rejected in part, modified in part and otherwise accepted, as modified.

1

I.     DISCUSSION

       A.     Standard of Review

Any party may serve and file written objections to a report and recommendation of a

magistrate judge on a dispositive matter within fourteen (14) days after being served with a copy

thereof.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Any portion of such a report and

recommendation to which a timely objection has been made is reviewed *de novo.  See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Objections to a magistrate judge's report and recommendation "must be specific and

clearly aimed at particular findings in the magistrate judge's proposal."  *Trivedi v. N.Y.S. Unified*

*Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 726 (S.D.N.Y. 2011), *aff'd sub nom*

*Seck v. Office of Court Admin.*, 582 F. App'x 47 (2d Cir. Nov. 6, 2014) (quotations and citation

omitted); *see also Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (holding

that objections must be specific and "address only those portions of the proposed findings to

which the party objects." (quotations and citation omitted)).  General objections, or "objections

that are merely perfunctory responses argued in an attempt to engage the district court in a

rehashing of the same arguments set forth in the original papers will not suffice to invoke de

novo review . . . [because] [s]uch objections would reduce the magistrate's work to something

akin to a meaningless dress rehearsal."  *Owusu v. New York State Ins.*, 655 F. Supp. 2d 308, 313

(S.D.N.Y. 2009) (alterations, quotations and citations omitted); *accord Phillips*, 955 F. Supp. 2d

at 211; *see also Charles v. County of Nassau*, 116 F. Supp. 3d 107, 116 (E.D.N.Y. 2015) ("The

clearly erroneous standard . . . applies when a party makes only conclusory or general objections,

or simply reiterates its original arguments.")  To accept the report and recommendation of a

magistrate judge to which such general or perfunctory objections are made, or to which no specific, timely objection has been made, the district judge need only be satisfied that there is no clear error apparent on the face of the record. *See* Fed. R. Civ. P. 72(b); *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000) (a court may review a report to which no timely objection has been interposed to determine whether the magistrate judge committed "plain error."); *Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 129 (E.D.N.Y. 2015) ("[I]f a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (quotations and citation omitted)).

District courts have discretion to consider new evidence that was not submitted to the magistrate judge in reviewing any portion of a report and recommendation to which a timely objection has been made. *See Kazolias v. IBEW LU 363*, 806 F.3d 45, 54 (2d Cir. 2015) (citing 28 U.S.C. § 636(b)(1) ["The judge may also receive further evidence . . . ."]); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) ("Both § 636(b)(1) and Fed. R. Civ. P. 72(b) explicitly permit the district court to receive additional evidence as part of its review.") However, "[c]onsiderations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration, and [the Second Circuit] ha[s] upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review." *Hynes*, 143 F.3d at 656; *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further [evidence] when it offers no justification for not offering the [evidence] . . . before the magistrate." (quotations, alterations and citation omitted)).

Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

B.      Defendants' Objections

Defendants contend, *inter alia*, that Magistrate Judge Shields erred: (i) in finding that plaintiffs appealed sixty (60) of their ERISA claims, since only fifty-four (54) of the ERISA claims were appealed; (ii) in recommending that the parties engage in expedited discovery to ascertain whether there are anti-assignment provisions in the governing plan documents that would dispose of their remaining ERISA and state law claims instead of addressing the merits of the parties' arguments regarding the anti-assignment provisions in the relevant plan documents; and (iii) in failing (a) to address their arguments that eleven (11) health care claims arising under the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8902, *et seq.*, should be dismissed, and (b) to recommend that the dismissal of plaintiffs' claims should be with prejudice.

Contrary to plaintiffs' contentions, defendants' objections to the Report are sufficiently specific and directed at particular findings therein so as to warrant *de novo* review. To the extent defendants reiterate their original arguments in their motion to dismiss, it is generally because the Report fails to address those arguments.

1.      Number of ERISA Claims Plausibly Alleged to be Exhausted in the Amended Complaint

Since the Report includes six (6) of the forty-five (45) state law claims asserted in the

amended complaint in the total number of ERISA claims plausibly alleged to be exhausted therein, defendants' first objection is sustained.

Moreover, as set forth below, plaintiffs now seek to withdraw approximately half of the total claims asserted in the amended complaint, including, *inter alia*, the following four (4) ERISA claims plausibly alleged to be exhausted therein: (a) the claim asserted by "MH" for services rendered on May 6, 2014, (Amended Complaint ["Am. Compl."], ¶¶ 744-751); and (b) three (3) of the five (5) claims asserted by "WW" for services rendered on April 29, 2014, and on August 14, 2014 under CPT codes 49560 and 49568, (Am. Compl., ¶¶ 1891-1898). (*See* Plaintiffs' Objections to the Report ["Plf. Obj."] at 7; Declaration of Jacqueline Spina in Support of Plaintiffs' Objections to the Report ["Spina Decl."], Ex. 1). Thus, the Report is modified to exclude from Magistrate Judge Shields's finding that there are sixty (60) ERISA claims plausibly alleged to be exhausted in the amended complaint the six (6) claims arising under state law[1], (*see* Am. Compl., ¶¶ 287-293), and the aforementioned four (4) ERISA claims plausibly alleged to be exhausted that plaintiffs now voluntarily withdraw, (*see id.*, ¶¶ 744-751 and 1891-1898), *i.e.*, to indicate that there are fifty (50) ERISA claims plausibly alleged to be exhausted in the amended complaint.

2. Anti-Assignment Provisions

a. ERISA Claims

---

[1] Moreover, in their objections to the Report, plaintiffs seek to withdraw, *inter alia*, four (4) of those state law claims, *i.e.*, all of the state law claims asserted by "MC" except for those claims relating to services provided on April 2, 2014, on the basis that those claims were, in fact, paid. (*See* Plf. Obj. at 7; Spina Decl., Ex. 1).

Rather than address the merits of defendants' argument that the anti-assignment provisions in certain plan documents bar many of plaintiffs' ERISA claims, the Report instead recommends "that the parties proceed with targeted expedited discovery" setting forth for each of the remaining ERISA claims, *inter alia*, the particular ERISA plan at issue and whether that plan includes an anti-assignment provision, so as to "place the parties in the best position to commence with dispositive motion practice in an efficient manner."[2] (Report at 12). However, the Report seemingly overlooks that the aforementioned information is already before the Court. Specifically, of the fifty (50) ERISA claims remaining in this action, the following thirteen (13) claims involve plans that include an anti-assignment provision: (a) the claim of "KB" relating to services provided on August 21, 2012, (Am. Compl., ¶¶ 205-211), and the claim of "AC" relating to services rendered on July 23, 2014, (*id.*, ¶¶ 274-280), involve the Hudson Valley Hospital Center Groups 37721-7, 8, 9 (EPO) Plan ("the HVHC Plan"); (b) the claim of "AC" relating to services rendered on May 19, 2014, (*id.*, ¶¶ 294-301), involves the Banco Santander International Miami Groups 377333-1 & 377333-6 (PPO) Plan ("the BSIM Plan"); (c) the five (5) claims of "DC" relating to services rendered on March 4, 2013 and April 18, 2013, (*id.*, ¶¶ 335-342), and the claim of "DD" relating to services provided on July 1, 2013, (*id.*, ¶¶ 374-381), involve Empire's DirectShare POS Plan for Catholic Health Services Group 377650 Plan ("the CHS Plan"); (d) the claim of "SP" relating to services provided on April 1, 2014, (*id.*, ¶¶ 1422-

_____

[2] Although plaintiffs indicate that they do not object to so much of the Report as recommends, *inter alia*, that the parties engage in targeted expedited discovery with respect to each of their ERISA claims which were the subject of a formal appeal, they "suggest[] as an alternative that [they] be permitted to amend [their] complaint to provide the clarity the [Report] seeks[] . . . [and] proceed with discovery on such claims thereafter." (Plf. Obj. at 10-11). However, in light of the determination herein, plaintiffs' suggested alternative is rejected.

1429), involves the Hewlett-Packard Company Plan ("the HP Plan"); and (e) the three (3) claims of "TR" relating to services provided on August 6, 2013, (*id.*, ¶¶ 1537-1544), involve the ADP TotalSource EPO Group 376415-5C Plan ("the ADP Plan")[3]. Accordingly, defendants' second objection is sustained and the branch of the Report recommending "that the parties proceed with targeted expedited discovery" with respect to the fifty (50) ERISA claims plausibly alleged to be exhausted in the amended complaint, (Report at 12), is rejected.

The HVHC Plan and ADP Plan each contain the following anti-assignment provision under the heading, "This Certificate Is Not Assignable:"

> "Only Covered Persons can receive the benefits provided under this Certificate for payment. Therefore, except as otherwise specifically set forth elsewhere in this Certificate, any attempt to assign benefits or payments for benefits will be void unless authorized by us in writing, and no benefits, payments or rights may be claimed under any attempted assignment."

(Declaration of Rachel Kramer ["Kramer Decl."], Ex. 5 at 72 (HVHC Plan) and Ex. 35 at 134 (ADP Plan)). Plaintiffs asserting claims under those plans do not allege that they received written authorization of any assignment from defendants; nor have they shown any exceptions to the anti-assignment provision elsewhere in the relevant plan documents.

The BSIM Plan contains a virtually identical anti-assignment provision under the heading, "This Contract Is Not Assignable," to wit:

> "Only Covered Persons can receive the benefits provided under this Contract for

---

[3] The Court can properly consider the plan documents on defendants' motion to dismiss "because the plaintiffs' claims are based upon the ERISA plans and the plan documents plainly are integral to plaintiffs' [amended] complaint." *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 545 n. 22 (E.D.N.Y. 2011); *see also Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 283 n. 2 (E.D.N.Y. 2014) (finding that since the plaintiff's claim was based upon an ERISA plan, the plan documents were integral to the complaint).

> payment. Therefore, except as otherwise specifically set forth elsewhere in this Contract, any attempt to assign benefits or payments for benefits will be void unless authorized by us in writing, and no benefits, payments or rights may be claimed under any attempted assignment."

(Kramer Decl., Ex. 11 at 128). The plaintiff asserting a claim under the BSIM Plan does not allege that he or she received written authorization of any assignment from defendants; nor does he or she show that there are any exceptions to the anti-assignment provision elsewhere in the plan documents.

The CHS Plan contains the following anti-assignment provision, under the heading, "Assignment:"

> "You authorize Empire, on behalf of the Employer, to make payments directly to participating In-Network Providers for Covered Services. Empire also reserves the right to make payments directly to you. Except where Empire expressly indicates otherwise, in the case of services provided by an out of network provider, payments will always be made directly to you for services provided by the out of network provider. Payments may also be made to, and notice regarding the receipt and/or adjudication of claims, an Alternate Recipient, or that person's custodial parent or designated representative. Any payments made by Empire will discharge the Employer's obligation to pay for Covered Services. *You cannot assign your right to receive payment to anyone else, except as required by a 'Qualified Medical Child Support order' as defined by any applicable state or Federal law.*
>
> Once a Provider performs a Covered Service, Empire will not honor a request to withhold payment of the claims submitted.
>
> *The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above.*"

(Kramer Decl., Ex. 54 at 51) (emphasis added). Plaintiffs asserting claims under the CHS Plan do not allege that they received written consent of any assignment from defendants or that any of the purported assignments were required by a "Qualified Medical Child Support order."

The HP Plan contains the following anti-assignment provision under the heading,

"Benefits Not Transferable:"

> "Only the *member* is entitled to receive benefits under this *plan*. The right to benefits cannot be transferred."

(Kramer Decl., Ex. 32 at 85) (emphasis in original). The plaintiff asserting a claim under that plan has not shown that there is any exception to that anti-assignment provision elsewhere in the plan documents.

"[I]t is well-established in this Circuit that the assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA." *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 117 (S.D.N.Y. 2016) (quotations and citations omitted); *see also Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) (holding that in this Circuit, "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care have ERISA standing." (quoting *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 329 (2d Cir. 2011))). However, "[i]n order for an assignee to prevail on an ERISA claim, . . . the assignee must establish the existence of a valid assignment that comports with the terms of the welfare benefits plan." *Neuroaxis*, 919 F. Supp. 2d at 351.

Although "[t]he Second Circuit has not yet spoken on the effect of assignments made in violation of anti-assignment provisions in ERISA plans[,] [o]ther Circuit Courts[] . . . have concluded that where an ERISA-governed plan contains an unambiguous anti-assignment provision, assignments under that plan are invalid." *Merrick*, 175 F. Supp. 3d at 118-19 (citing cases). "District courts in this Circuit have followed this reasoning and, applying federal common law, have found that where plan language unambiguously prohibits assignment, an attempted assignment will be ineffectual [] and [] a healthcare provider who has attempted to

obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA." *Id.* at 119 (quotations, alterations and citation omitted) (citing cases); *accord Shuriz Hishmeh M.D. v. Empire Healthchoice HMO, Inc.*, No. 16-cv-2780, 2017 WL 663543, at * 3 (E.D.N.Y. Feb. 17, 2017); *see also Neuroaxis*, 919 F. Supp. 2d at 351-52; *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-cv-6551, 2016 WL 2939164, at * 4 (S.D.N.Y. May 19, 2016) ("Where ERISA plan language unambiguously prohibits assignment, . . . an attempted assignment will be ineffectual.")

"To determine whether contract language prohibits assignment to a healthcare provider, courts apply traditional principles of contract interpretation and interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Merrick*, 175 F. Supp. 3d at 117-18 (quotations and citation omitted); *see also Neuroaxis*, 919 F. Supp. 2d at 352 ("In determining whether contract language prohibits assignment to a healthcare provider, courts apply traditional principles of contract interpretation.") "Because the rules of contract law apply to ERISA plans, a court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous." *Merrick*, 175 F. Supp. 3d at 118 (quotations, alterations and citation omitted); *accord Neuroaxis*, 919 F. Supp. 2d at 352.

The plain meaning of the anti-assignment provisions in four (4) of the five (5) plans set forth above, *i.e.*, the HVHC Plan, the ADP Plan, the BSIM Plan and the CHS Plan, is that assignments are prohibited without the written consent or authorization of the plan[4], and that in the absence of such written consent or authorization, the assignment of benefits is

---

[4]  The CHS also allows assignments of the right to receive payment, but not the right to receive benefits thereunder, "as required by a 'Qualified Medical Child Support order' as defined by any applicable state or Federal law."  (Kramer Decl., Ex. 54 at 51).

unambiguously prohibited. *See, e.g. Merrick*, 175 F. Supp. 3d at 119-20; *Mbody*, 2016 WL 2939164 at * 5. The plain meaning of the anti-assignment provision in the fifth plan, *i.e.*, the HP Plan, is that the assignment of benefits is unambiguously prohibited under any circumstances.

The cases relied upon by plaintiffs in support of their contention that the anti-assignment provisions are ambiguous are inapposite. For example, in *Biomed Pharm., Inc. v. Oxford Health Plans (NY), Inc.*, No. 10-cv-7427, 2011 WL 803097 (S.D.N.Y. Feb. 18, 2011), the district court found that the relevant plan, which contained an anti-assignment provision, was ambiguous in light of another provision in the Plan providing: "You may request Us to make payment directly to you or to the provider. If you want Us to pay the provider directly (referred to as assignment), you must give the provider a blank claim form to be completed and forwarded with the itemized bill." *Id.* at * 5 (quotations and citation omitted). The court in *Biomed* held, *inter alia*, (1) that the latter provision "either expressly authorizes patients to assign their claims to healthcare providers without [the defendant's] consent, or, at the very least, creates an ambiguity within the contract that should be construed against the drafter," *id.*; and (2) that "[g]iven this ambiguity, [the defendant] [was] estopped from relying on the anti-assignment provision in light of [the defendant's] own long-term pattern and practice of accepting and paying on [the plaintiff's] direct billing."[5] *Id.* Other than their conclusory assertions of ambiguity, plaintiffs have not

---

[5] *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of New York, Inc.* ("*Cigna*"), No. 11-cv-8517, 2012 WL 4840807 (S.D.N.Y. Oct. 4, 2012), another case cited by plaintiffs, cited to *Biomed* for the proposition that the defendant's "long-standing pattern and practice of direct payment to [the plaintiff] is sufficient to show its consent to [the plaintiff's] assignments," *id.* at * 3, but omitted the phrase, "[g]iven this ambiguity" therefrom, thus broadening the holding of *Biomed* without explanation. Moreover, the anti-assignment provision at issue in *Cigna* was also ambiguous regarding assignments, as it provided: "Medical benefits are not assignable unless agreed to by [the defendant]. [The defendant] may at its option, make payment to you for the cost of any Covered Expenses received by you or your dependent from a

identified any similar provision in any of the five (5) aforementioned plans that renders the respective anti-assignment provision contained therein ambiguous.

Since plaintiffs have not identified any provision in the relevant plan documents rendering the anti-assignment provisions contained therein ambiguous, the purported assignments to plaintiffs are invalid unless defendants "waived or [are] estopped from relying on the [respective] provision." *Merrick*, 175 F. Supp. 3d at 120; *see also Mbody*, 2016 WL 2939164 at * 5. Contrary to plaintiffs' contention, even a "long-standing pattern and practice" of directly paying an out-of-network provider for services provided under an ERISA plan, without more, is insufficient "to show that [defendants] consented to the assignments, or is estopped from or waived its reliance on the [applicable] anti-assignment clause." *Merrick*, 175 F. Supp. 3d at 120; *see also Mbody*, 2016 WL 2939164, at * 5 ("Prior payments to healthcare providers do not create a viable estoppel claim, . . . where ERISA plans unambiguously prohibit assignments." (quotations and citation omitted)); *Neuroaxis*, 919 F. Supp. 2d at 355 (accord).

Similarly, the fact that defendants communicated with plaintiffs, and responded to their appeals, does not estop defendants from enforcing the applicable anti-assignment provision, nor constitute a waiver of defendants' rights under the anti-assignment provision. *See, e.g. Merrick*, 175 F. Supp. 3d at 120; *Mbody*, 2016 WL 2939164, at * 5. Accordingly, the branch of defendants' motion seeking dismissal of plaintiffs' ERISA claims pursuant to Rule 12(b)(6) of

---

Non-Participating Provider even if the benefits have been assigned." Furthermore, unlike four (4) of the five (5) plans at issue herein, authorization or consent for any assignment under the plan involved in *Cigna* did not have to be made in writing and, thus, arguably could be demonstrated by a long-standing pattern or practice of direct payment to the provider. The anti-assignment provision in the fifth plan in this case, *i.e.*, the HP Plan, does not allow assignment upon consent at all, whether express or implied. Thus, *Cigna* is also inapposite.

the Federal Rules of Civil Procedure based upon the anti-assignment provisions contained in certain of the plan documents is granted to the extent that the aforementioned thirteen (13) ERISA claims that involve one (1) of the five (5) plans containing an unambiguous anti-assignment provision set forth above are dismissed in their entirety with prejudice for failure to state a claim for relief.[6] Thus, only the thirty-seven (37) plausibly exhausted ERISA claims that do not involve one (1) of the five (5) plans containing anti-assignment provisions set forth herein remain in this case.

---

[6] The Court declines to consider whether any of the unexhausted ERISA claims should also be dismissed as barred by an anti-assignment provision contained in any benefits plan other than the five (5) plans identified herein. However, to the extent any of the unexhausted claims involve any of the five (5) plans analyzed herein, (*see, e.g.* Am. Compl., ¶¶ 176-183 [CHS Plan]; 212-17 [HVHC Plan]; 403-408 [HVHC Plan]; 456-461 [CHS Plan]; 510-516 [HVHC Plan]; 752-758 [HVHC Plan]; 1083-1089 [CHS Plan]; 1097-1103 [HVHC Plan]; 1146-1152 [CHS Plan]; 1231-1237 [CHS Plan]; 1322-1328 [CHS Plan]; 1378-1384 [CHS Plan]; 1408-1414 [CHS Plan]; 1650-1656 [CHS Plan]; 1771-1777 [CHS Plan]; 1813-1819 [CHS Plan]; 1913-1919 [CHS Plan]; and Ex. A [claim of SK for date of service 12/18/2013 (CHS Plan); claims of JO for date of service 8/14/2013 (CHS Plan); claim of BR for date of service 8/22/2012 (CHS Plan); and claim of SG for date of service 1/26/2015 (HVHC Plan)), they are clearly subject to the same unambiguous anti-assignment provisions set forth above. Thus, the amended complaint fails to state a plausible claim for relief with respect to those approximately forty-eight (48) unexhausted claims as well. Moreover, plaintiffs now withdraw fourteen (14) of those claims, *i.e.*, two (2) of the three (3) claims asserted by "RH" for services rendered on January 15, 2015 under CPT code 43775, (Am. Compl., ¶¶ 752-758); the claim asserted by "AD" for services rendered on January 28, 2015, (*id.*, ¶¶ 403-408); the four claims asserted by DD for services rendered on January 16, 2013, (*id.*, ¶¶ 456-461); one (1) of the two (2) claims asserted by "RM" for services rendered on January 16, 2013, (*id.*, ¶¶ 1083-1089); the two (2) claims asserted by "AM" for services rendered on January 15 and 23, 2015, (*id.*, ¶¶ 1146-1152); the claim asserted by "LM" for services rendered on January 8, 2015, (*id.*, ¶¶ 1231-1237); one (1) of the three (3) claims asserted by LO for services rendered on August 14, 2013, (*id.*, ¶¶ 1322-1328); and the claims of SK and SG for services rendered on December 18, 2013 and January 26, 2015, respectively, (*id.*, Ex. A). (*See* Plf. Obj. at 7; Spina Decl., Ex. 1).

13

b.      State Law Claims

Plaintiffs now withdraw thirty-three (33) of the forty-five (45) state law claims involving the Employee Medical Health Plan of Suffolk County ("the SCEH Plan").  (*See* Plf. Obj. at 7 and Spina Decl., Ex. 1 [withdrawing four (4) of the six (6) claims asserted by "MC" for services rendered on November 11, 2014, December 11 and 12, 2014 and January 7, 2015, (Am. Compl., ¶¶ 287-293); all eight (8) of the claims asserted by "JK" for services rendered on January 15, 2015, (*id.*, ¶¶ 887-893); both of the claims asserted by "GM" for services rendered on January 19, 2015, (*id.*, ¶¶ 1041-1047); all four (4) of the claims asserted by "DN" for services rendered on January 22, 2015, (*id.*, ¶¶ 1266-1272); two (2) of the three (3) claims asserted by "AO" for services rendered on May 15, 2013 with CPT codes 99254 and 47562, (*id.*, ¶¶ 1301-1307); the one (1) claim asserted by "TS" for services rendered on July 25, 2012, (*id.*, ¶¶ 1749-1755); all eleven (11) claims asserted by "JW" for services rendered on April 24, 2013, October 2 and 27, 2014, January 15, 2014, and February 12, 2015, (*id.*, ¶¶ 1841-1847); and two (2) of the three (3) claims asserted by "DR" for services rendered on January 29, 2015, (*id.*, Ex. A)]).  Accordingly, only the following twelve (12) state law claims remain in this action: (a) the seven (7) claims asserted by "DE" for services rendered on March 23, 2010, (Am. Compl., ¶¶ 114-120); (b) the two (2) claims asserted by "MC" for services rendered on April 2, 2014, (*id.*, ¶¶ 287-293); (c) one (1) of the claims asserted by "AO" for services rendered on May 15, 2013 with CPT code 47562; (d) the one (1) claim asserted by "BO" for services rendered on October 16, 2013, (*id.*, ¶¶ 1315-1321); and (e) the one (1) claim asserted by "DR" for services rendered on August 21, 2013, (*id.*, Ex. A).

Rather than address the merits of any of defendants' arguments seeking the dismissal of

plaintiffs' state law claims, the Report *sua sponte* raised the issue of supplemental jurisdiction, finding that "Plaintiffs' 45 non-ERISA claims fail to provide this Court and Defendants with sufficient detail regarding whether this Court may exercise jurisdiction over such claims[] . . . because Plaintiffs have failed to assert the scope of any purported assignment of rights or benefits from their patients." (Report at 14-15). Accordingly, the Report recommends "that the parties proceed with targeted expedited discovery focused on the potentially dispositive facts underlying the 45 non-ERISA claims, i.e., whether the specific plan at issue includes an anti-assignment provision[;] . . . [and] that the Court refrain from making a determination regarding the exercise of supplemental jurisdiction over any potential state-law claims contained in Plaintiffs' Amended Complaint until such expedited discovery is completed."[7] (*Id.* at 15). However, that branch of the Report is rejected because such discovery is unnecessary since the relevant plan, *i.e.*, the SCEH Plan, was submitted on defendants' motion to dismiss and, like the ERISA plans set forth above, is properly considered as integral to the amended complaint. *See, e.g. Star Multi Care*, 6 F. Supp. 3d at 283 n. 2; *DeSilva*, 770 F. Supp. 2d at 545 n. 22.

The SCEH Plan contains the following provision in italicized print:

"Note: Assignment of benefits to a non-network provider is not permitted."

---

[7] Although plaintiffs do not object to this branch of the Report, they "do[] not concede that the simple presence of an anti-assignment provision leads to the conclusion that assignment did not occur . . . ." (Plf. Obj. at 15). Plaintiffs contend that defendants waived any anti-assignment provision in the relevant plan documents "and consent[ed] to assignment by explicitly pre-authorizing claims, paying portions of claims, and otherwise implying that payment would be made directly to [plaintiffs], before refusing to make payment[;]" and that defendants' "assertions of a non-assignment provision are unavailing because [they] ha[ve] failed to point to any language stating that assignment of benefits would be invalid or void." (Plf. Obj. at 16). Plaintiffs concede, however, that their latter argument "is a new argument that was not initially made in the underlying motion papers." (*Id.*)

(Kramer Decl., Ex. 3 at 91).

"Under New York law, an assignment is valid even where an agreement generally prohibits assignment, unless the agreement specifies that an assignment would be invalid or void." *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 226 (S.D.N.Y. 2014) (quotations and citation omitted). "Thus, it has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments." *Id.* (quotations and citation omitted); *see also Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 450, 103 N.E.2d 891 (N.Y. 1952) ("[I]n the absence of language clearly indicating that a contractual right thereunder shall be nonassignable, a prohibitory clause will be interpreted as a personal covenant not to assign.")

In *Semente v. Empire Healthchoice Assurance, Inc.*, 147 F. Supp. 3d 117, 121 (E.D.N.Y. 2015), *reconsideration granted on other grounds*, No. 14-cv-5823, 2016 WL 4621076 (E.D.N.Y. Sept. 6, 2016) (quotations and citation omitted), the Honorable Denis R. Hurley, United States District Judge, addressed the identical provision at issue here and found that it "does not contain a definite declaration of the invalidity of an assignment as it 'contain[s] no provision that the assignment [of benefits] should be void, nor does it provide that an assignee would acquire no rights by reason of any such assignment, nor [does] it provide that the contractor shall not be required to recognize or accept any such assignment." *Id.*, 147 F. Supp. 3d at 122 (brackets in original) (quoting *Sullivan v. Int'l Fid. Ins. Co.*, 96 A.D.2d 555, 556, 465 N.Y.S.2d 235 (N.Y.

App. Div. 1983)[8]).

However, in *American Med. Ass'n v. United Healthcare Corp.*, No. 00-cv-2800, 2001

WL 863561 (S.D.N.Y. July 31, 2001), the Honorable Lawrence Michael McKenna, United States

District Judge, found to the contrary, *i.e.*, that a virtually identical provision to the one at issue

both here and in *Semente*, "contain[ed] the 'clear, definite and appropriate language declaring the

invalidity' of assignments necessary to be a valid anti-assignment clause.'" *Id.* at * 12 (quoting

*Cole v. Metropolitan Life Ins. Co.*, 273 A.D.2d 832, 833, 708 N.Y.S.2d 789 (N.Y. App. Div.

2000)). Similarly, the Appellate Division in *Cole*, 273 A.D.2d at 833, the case upon which Judge

McKenna relied, found that the assignments to the plaintiff were void where the contract

contained a similar provision to the one at issue in this case, *i.e.*, that "[a]ssignment of benefits to

a Non-Participating Provider is not permitted" and, thus, that the assignments did not confer

standing upon the plaintiff. I find the holding of *American Med.*, and its reliance on a New York

case construing a virtually identical anti-assignment provision as the one at issue in this case, to

be more persuasive than the holding of *Semente*. Accordingly, the branch of defendants' motion

seeking dismissal of plaintiffs' state law claims pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure on the basis that the anti-assignment provision in the SCEH Plan deprives them

of standing is granted and plaintiffs' remaining twelve (12) state law claims involving the SCEH

---

[8] The anti-assignment provision in the construction contract at issue in *Sullivan* provided that "[n]either party may assign this agreement, or any right or interest hereunder without the consent of the other party; DOUBLE G shall not assign any monies due or to become due to it hereunder without the prior written consent of INTERNATIONAL." *Sullivan*, 96 A.D.2d 555, 555, 465 N.Y.S.2d 235 (N.Y. App. Div. 1983). The Appellative Division found that the language in that provision "was merely a covenant not to assign[]" that did not "defeat any recovery by plaintiff." *Id.* at 556. However, *Sullivan* is inapposite because unlike the provision at issue in this case which unequivocally prohibits the assignment of benefits, the anti-assignment provision in *Sullivan* permitted assignments upon consent.

Plan are dismissed in their entirety with prejudice for failure to state a claim for relief.


### 3. Claims Arising Under the FEHBA

The amended complaint asserts the following eleven (11) claims involving the Federal Employees Health Benefits Plan ("the FEHB Plan"): (a) three (3) claims by "JM" for services rendered on August 20, 2012, (Am. Compl., ¶¶ 1196-1202); (b) one (1) claim by "SMM" for services rendered on December 23, 2014, (*id.*, ¶¶ 1259-1265); (c) one (1) claim by "LP" for services rendered on January 24, 2013, (*id.*, ¶¶ 1400-1407); (d) five (5) claims asserted by "ES" for services rendered on October 7, 8 and 9, 2014 and January 29, 2015, (*id.*, ¶¶ 1664-1670); and (e) one (1) claim by "HG" for services rendered on January 22, 2015, (*id.*, Ex. A). However, plaintiffs now withdraw the claim of "HG" for services rendered on January 22, 2015, (*id.*, Ex. A), and the three (3) claims asserted by "ES" for services rendered on October 7, 8 and 9, 2014, (*id.*, ¶¶ 1664-1670). (*See* Plf. Obj. at 7 and Spina Decl., Ex. 1). Accordingly, only seven (7) claims arising under the FEHBA remain in this action.

The Report does not address defendants' contentions that plaintiffs' claims arising under the FEHBA must be dismissed as a matter of law because: (a) the FEHBA completely preempts state law with respect to claims relating to benefits; (b) the only proper defendant in an action relating to benefits under an FEHB Plan is the Office of Personnel Management ("OPM"); and (c) the amended complaint is bereft of any factual allegations suggesting that plaintiffs exhausted their administrative remedies through appeal to the OPM. Plaintiffs did not address those arguments in their opposition to defendants' motion and do not address the merits of those arguments in their response to defendants' objections to the Report. Rather, plaintiffs merely

contend that defendants "perfunctorily and conclusorily repeat[] [their] arguments concerning claims allegedly arising under the [FEHBA] . . . . [and] offer[] no concrete objections other than to point out that the [Report] did not address these claims[;]" and that this Court should, thus, "review dismissal of these claims only for clear error." (Plf. Opp. at 3).

"FEHBA contains a preemption clause, § 8902(m)(1), displacing state law on issues relating to 'coverage or benefits' afforded by health-care plans." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 683, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006). Specifically, FEHBA provides: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). Under Section 8902(m)(1), "state law– whether consistent or inconsistent with federal plan provisions– is displaced on matters of 'coverage or benefits.'" *McVeigh*, 547 U.S. at 686, 126 S. Ct. 2121.

Moreover, "FEHBA assigns to OPM responsibility for negotiating and regulating health-benefits plans for federal employees." *McVeigh*, 547 U.S. at 683, 126 S. Ct. 2121. An OPM regulation provides:

> "Federal Employees Health Benefits (FEHB) carriers resolve FEHB claims under authority of Federal statute (5 U.S.C. chapter 89). A covered individual may seek judicial review of OPM's final action on the denial of a health benefits claim. *A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors.* The recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute."

5 C.F.R. § 890.107(c) (emphasis added). "[T]his regulation channels disputes over coverage or benefits into federal court by designating a United States agency (OPM) sole defendant . . . ."

*McVeigh*, 547 U.S. at 686-87, 126 S. Ct. 2121. Accordingly, the branch of defendants' motion

seeking dismissal of plaintiffs' claims involving the FEHB Plan pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure is granted and plaintiffs' seven (7) remaining claims involving

the FEHB Plan are dismissed in their entirety with prejudice for failure to state a claim for relief.

*See, e.g. Mbody*, 2014 WL 4058321, at * 6 (dismissing the plaintiffs' state law claims under

plans governed by the FEHBA because they failed to sue the OPM).[9]


### 4. Leave to Amend

Defendants contend that plaintiffs' unexhausted ERISA claims should be dismissed with

prejudice in light of the procedural history of this case[10] and because "there is no conceivable

amendment that Plaintiffs could provide to cure the deficiencies identified in the Report

regarding their failure to exhaust remedies." (Def. Obj. at 6).

Plaintiffs did not seek leave to re-plead their amended complaint in their opposition to

defendants' motion to dismiss. Instead, plaintiffs' first request for leave to replead was made

---

[9] In light of this determination, it is unnecessary to consider defendants' remaining
contentions seeking dismissal of plaintiffs' claims involving the FEHB Plan.

[10] As set forth in the Report, the procedural history of this case is as follows:

> "After this action was initially filed on April 3, 2015 . . . Empire briefed a motion
> to dismiss the Complaint and transmitted it to Plaintiffs' counsel. . . . Plaintiffs
> then requested a pre-motion conference regarding leave to amend the Complaint. .
> . . Such a conference was held before [Magistrate Judge Shields] on January 11,
> 2016, and the parties agreed that Plaintiffs would amend the Complaint, rather
> than brief a motion for leave to amend . . . . Plaintiffs filed and served the
> presently operative Amended Complaint . . . . [Defendants] subsequently filed the
> instant motion to dismiss. . . ."

(Report at 6-7 (citations omitted)).

informally in their opposition to defendants' objections to the Report, wherein they contend, *inter alia*, (a) that the deficiency in their pleading of the unexhausted claims "is an easily remedied issue– [they] simply must assert additional facts pertaining to [their] appeals[,]" (Plaintiffs' Opposition to Defendants' Objections to the Report ["Plf. Opp."] at 4-5); (b) that defendants' "assumption that [they] cannot cure the alleged defects . . . is clearly belied by [plaintiffs'] opposition to the [Report], which states that approximately 300 appeals were submitted on the claims in dispute, not 60[] . . . [and] [t]hus, there is no reason not to dismiss this matter without prejudice and permit [plaintiffs] to replead[,]" (*id.* at 5); (c) that "this is a large case encompassing hundreds of claims, and ascertaining the precise details of each claim is a laborious process that takes time[,] . . . [but] [plaintiffs] can spend additional time reviewing its files to provide more details on the appeals that were submitted to [defendants]," (*id.*); and (d) that "[i]t would be a miscarriage of justice – and an unfair windfall to [defendants] – not to permit [plaintiffs] to pursue these claims." (*Id.*)

Although leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), it "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quotations and citation omitted); *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

Before filing the amended complaint, plaintiffs were fully aware of the deficiencies in their original complaint as a result of defendants' service of their first motion to dismiss and the conference before Magistrate Judge Shields; they were given an opportunity to file an amended

complaint to cure those pleading deficiencies; and their amended complaint failed to cure those deficiencies, generally as a result of plaintiffs' failure to fully investigate their extensive claims. (*See, e.g.* Plf. Opp. at 5; Plf. Obj. at 8).  As a result of plaintiffs' failure to fully investigate their claims, *inter alia*, defendants and Magistrate Judge Shields were required to consider and address over four hundred (400) claims that plaintiffs now voluntarily withdraw, as well as numerous allegations that plaintiffs now seek to amend, *e.g.*, which claims were exhausted, which claims were not exhausted because plaintiffs purportedly deemed any appeal to be futile, etc.  Not only did plaintiffs fail to seek leave to file a second amended complaint until after Magistrate Judge Shields issued the Report recommending, *inter alia*, that the vast majority of their ERISA claims be dismissed as unexhausted, they do not now proffer a proposed new pleading and it is clear that they have still not fully investigated their claims even though this action has been pending for almost two (2) years and they have had ample opportunity to do so.  (*See, e.g.* Plf. Obj. at 7, n. 5).  Plaintiffs' delay in investigating their claims and seeking leave to amend until after defendants had briefed a second motion to dismiss and Magistrate Judge Shields had rendered the Report clearly prejudiced defendants.  *See, e.g. Levin v. Credit Suisse Inc.*, 577 F. App'x 85, 86 (2d Cir. Sept. 5, 2014) (summary order) (affirming the denial of the plaintiff's motion for leave to amend because, *inter alia*, he had received letters from the defendants explaining the deficiencies in his second amended complaint "and nonetheless chose to stand on his pleadings," and his failure to seek leave to replead until after the defendants "had fully briefed their motions and the district court had rendered its decision prejudiced" the defendants); *Farricker v. Penson Dev., Inc.*, 513 F. App'x 46, 48-49 (2d Cir. Mar. 1, 2013) (affirming the denial of the plaintiff's motion for leave to amend that was filed nine (9) months after the defendant had filed its fully briefed motion to

dismiss based upon "the undue prejudice that the unexplained delay would have caused [the defendant] in incurring additional time and expense to respond to a claim that should have been before the court in the initial complaint. . . .")  The facts plaintiffs seek to now assert almost two (2) years after this action was commenced were fully discoverable by plaintiffs at the time they filed the amended complaint, if not earlier, and should have been before the Court at that time. Accordingly, plaintiffs' request for leave to amend the amended complaint is denied and the Report is modified to indicate that, for the reasons set forth herein and in the Report, with the exception of the thirty-seven (37) remaining ERISA claims which are plausibly alleged to be exhausted in the amended complaint as set forth herein, plaintiffs' ERISA claims are dismissed in their entirety with prejudice.

C.      Plaintiffs' Objections

Plaintiffs contend, *inter alia*, that Magistrate Judge Shields erred in finding (i) that there are eight hundred forty-five (845) claims at issue in this case, since there are approximately nine hundred thirty-two (932) claims at issue; (ii) that only sixty (60) of the ERISA claims were the subject of a formal appeal, since at least three hundred one (301) of the nine hundred thirty-two (932) claims at issue have been the subject of an appeal[11]; (iii) that seven hundred eighty-five

---

[11]  Plaintiffs acknowledge that their second objection is based upon evidence that was not before Magistrate Judge Shields when she issued the Report and contend that this Court may "consider additional evidence that was not placed before the Magistrate[]" upon showing "a justification as to why the information was not presented in the first instance."  (Plf. Obj. at 7-8). Plaintiffs' justification for failing to provide that information to Magistrate Judge Shields in the first instance, *inter alia*, is that "[i]n this case, encompassing at the outset nearly one thousand claims for reimbursement, the investigation required to fully discern the details of each claim is labor-intensive, requiring a detailed review of the claim notes for each claim."  (*Id.* at 8).

(785) claims must be dismissed as unexhausted, since forty-five (45) of the claims are state law claims, eleven (11) of the claims arise under the FEHBA, and "the final numbers of which claims are ERISA and which are not cannot yet be ascertained[,]" (Plf. Obj. at 12); and (iv) that plaintiffs "failed to plead futility on the remaining claims." (Plf. Obj. at 11).

1.      Total Number of Claims and Exhausted Claims (First and Third Objections)

Plaintiffs never addressed defendants' apparent error in calculating the total number of claims asserted in their amended complaint, which was adopted in the Report, until they filed their objections to the Report.[12]  Nonetheless, since defendants do not dispute plaintiffs' assertion that their amended complaint asserts a total of nine hundred thirty-two (932) claims, (*see* Defendants' Response to Plaintiffs' Objections to the Report ["Def. Resp."] at 1 n. 1), plaintiffs' first objection is sustained and the Report is modified to indicate that the total number of claims asserted in the amended complaint is nine hundred thirty-two (932).

Plaintiffs indicate that of the nine hundred thirty-two (932) claims at issue in the amended complaint, they have, since the issuance of the Report, identified four hundred thirty-five (435) claims for which they are no longer seeking payment from defendants "primarily because [defendants] ha[ve] now paid the claim in full[,]" (Plf. Obj. at 7), thus leaving only four hundred

---

[12]  In their opposition to defendants' motion to dismiss, plaintiffs only vaguely referred to the "hundreds of" claims at issue in this action," (*see, e.g.* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ["Plf. Mem."] at 1, 2, 6, 11), without, *inter alia*, indicating the total number of claims actually asserted in the amended complaint or even suggesting that defendants' calculation of the total number of claims asserted in their motion to dismiss was incorrect.

ninety-seven (497) claims in issue.[13]  According to plaintiffs, "[t]hose claims should now be removed[]" from this case.  (*Id.*)  In light of plaintiffs' withdrawal of approximately half of the claims asserted in the amended complaint, and the dismissal of plaintiffs' state law claims, claims arising under the FEHBA and ERISA claims involving plans containing the anti-assignment provisions set forth above, plaintiffs' third objection is sustained to the extent that the Report is modified to reflect that, for the reasons set forth herein and in the Report, only the thirty-seven (37) ERISA claims that are plausibly alleged to be exhausted in the amended complaint, and that do not involve one (1) of the five (5) plans containing an anti-assignment provision set forth above, remain in this action; and that, with the exception of the thirteen (13) ERISA claims involving one (1) of the five (5) plans containing an anti-assignment provision set forth above that are dismissed for failure to state a claim for relief, the remaining ERISA claims asserted in the amended complaint that are not now voluntarily withdrawn by plaintiffs are dismissed for failure to exhaust administrative remedies.[14]

2.      Number of ERISA Claims Plausibly Alleged to be Exhausted (Second Objection)

Although this Court may have the discretion to consider new evidence that was not before Magistrate Judge Shields when she considered defendants' motion to dismiss, the problem with

---

[13]  Approximately seventy-five percent (75%) of the claims for which plaintiffs are no longer seeking payment have been paid by defendants.  Plaintiffs admittedly "did not investigate whether th[o]se claims had been appealed." (Spina Decl., ¶ 5; *see also* Plf. Obj. at 7 n. 5 ["'[Plaintiffs'] figures assume that all paid and withdrawn claims were not appealed – some may have been but [they] ha[ve] not performed that search."])

[14]  As noted above, approximately forty-eight (48) of those unexhausted ERISA claims are also barred by the anti-assignment provision in the relevant plan involved.

plaintiffs' evidentiary submission, *i.e.*, the declaration of plaintiffs' billing manager, Jacqueline Spina ("the Spina Declaration"), *inter alia*, is that it constitutes extrinsic evidence that is not properly considered in determining defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014). As the facts asserted in the Spina Declaration are not alleged in the amended complaint, and the Spina Declaration was not attached to the amended complaint or incorporated by reference therein; is not a matter of which judicial notice may be taken; and is not integral to the amended complaint, it may not be considered by the Court upon *de novo* review of the Report any more than it could have been considered by Magistrate Judge Shields upon her initial determination of defendants' motion to dismiss.[15] Accordingly, plaintiffs' second objection is overruled; so much of the Report as recommends that the branch of defendants' motion seeking dismissal of plaintiffs' ERISA claims for failure to exhaust administrative remedies be denied with respect to the sixty (60) claims alleging engagement in

---

[15] The Court has considered the Spina Declaration only to ascertain which claims plaintiffs now request be removed from this case. (Plf. Obj. at 7). The Court will not treat defendants' motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 12(d), at this juncture.

the appeal process is accepted, as modified for the reasons set forth above, to exclude the six (6) claims arising under state law, (*see* Am. Compl., ¶¶ 287-293), the four (4) ERISA claims plausibly alleged to be exhausted that plaintiffs now withdraw, and the thirteen (13) claims involving one (1) of the five (5) aforementioned plans containing an unambiguous anti-assignment provision, so that there are thirty-seven (37) ERISA claims plausibly alleged to be exhausted in the amended complaint and remaining in this action; and, for the reasons set forth herein and in the Report, the branch of defendants' motion to dismiss plaintiffs' ERISA claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies is granted and, with the exception of the thirty-seven (37) ERISA claims plausibly alleged to be exhausted in the amended complaint as set forth herein, and the thirteen (13) ERISA claims involving one (1) of the five (5) aforementioned plans containing an unambiguous anti-assignment provision which are dismissed in their entirety with prejudice for failure to state a claim for relief,  plaintiffs' ERISA claims that are not now voluntarily withdrawn by plaintiffs are dismissed in their entirety with prejudice for failure to exhaust administrative remedies.

3.      Futility of Exhausting Administrative Remedies

As noted above and in the Report, the amended complaint plausibly alleges that only fifty-four (54), *i.e.*, approximately six percent (6%), of the eight hundred seventy-six (876)[16] ERISA claims asserted therein were exhausted.  Thus, "even though establishing exhaustion is

---

[16]  This number excludes the forty-five (45) state law claims and eleven (11) claims arising under the FEHBA.

generally considered a prerequisite to pursuing an ERISA action[,]" *Star Multi Care*, 6 F. Supp. 3d at 292-93; *see also Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, 517 F. Supp. 2d 646, 650-51 (W.D.N.Y. 2007), the amended complaint is devoid of any factual allegations from which it may reasonably be inferred that plaintiffs exhausted the vast majority, *i.e.*, approximately eight hundred twenty-two (822), of their ERISA claims. "Although courts will waive the exhaustion requirement if the Plaintiff makes a clear and positive showing that pursuing available administrative remedies would be futile[,]" *Star Multi Care*, 6 F. Supp. 3d at 293 (quotations, alterations and citation omitted); *see also Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) ("Where claimants make a clear and positive showing that pursing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement"[17] (quotations and citation omitted)), Magistrate Judge Shields correctly found that the amended complaint failed to plausibly allege that plaintiffs' pursuit of administrate remedies would have been futile.[18] *See, e.g. Greifenberger v. Hartford Life Ins. Co.*, 131 F. App'x 756, 759 (2d Cir. May 16, 2055) (summary order) (finding that the plaintiff failed "to

---

[17] "The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Kennedy*, 989 F.2d at 594 (quotations and citation omitted); *accord Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001).

[18] Moreover, the fact that plaintiffs now withdraw approximately three hundred twenty-three (323) of their claims, or approximately thirty-five percent (35%) of their total claims, on the basis that those claims have been paid, and at least four (4) of the fifty-four (54) ERISA claims that are plausibly alleged to have been exhausted in the amended complaint, cuts against their claim that exhaustion of administrative remedies was futile.

make the clear and positive showing of futility necessary to" excuse her from the exhaustion requirement because allegations that the defendant's "initial unreasonable denial of her benefits claim indicates the futility of further appeal, . . . are insufficient to establish futility, particularly where a plaintiff has made no attempt whatsoever to file an administrative claim or to notify the insurer that she disputes its denial of benefits[,]" and the mere assertion that the defendant "denied coverage for . . . benefits that were properly due under the policy[] . . . is precisely the sort of claim properly raised on administrative appeal[]" and does not establish bad faith (quotations and citation omitted)); *Kesselman v. Rawlings Co., LLC*, 668 F. Supp. 2d 604, 609 (S.D.N.Y. 2009) (dismissing the plaintiff's ERISA claim for failure to exhaust administrative remedies where the plaintiff "failed to allege any facts from which the Court might infer that her pursuit of administrative remedies under the plan at issue would be futile.")  Accordingly, plaintiffs' final objection is overruled and the branch of the Report recommending, in effect, that plaintiffs' ERISA claims be dismissed for failure to exhaust administrative remedies, except for the sixty (60) claims plausibly alleged to have been exhausted in the amended complaint, is accepted, as modified to reflect, for the reasons set forth herein, that there are only thirty-seven (37) ERISA claims plausibly alleged to have been exhausted in the amended complaint remaining in this action.

II.      CONCLUSION

For the reasons set forth herein: (a) defendants' objections are sustained to the extent that (i) the Report is modified to indicate (A) that there are fifty (50) ERISA claims plausibly alleged to be exhausted in the amended complaint, of which only thirty-seven (37) remain; and (B) that,

with the exception of the thirty-seven (37) remaining ERISA claims which are plausibly alleged to be exhausted in the amended complaint, plaintiffs' ERISA claims are dismissed in their entirety with prejudice, (ii) the branches of the Report recommending that the parties proceed with targeted expedited discovery with respect to the remaining ERISA claims and state law claims are rejected, (iii) the branches of defendants' motion seeking dismissal of plaintiffs' ERISA claims and state law claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the basis that those claims are barred by an unambiguous anti-assignment provision contained in the relevant plan documents are granted to the extent that (A) the aforementioned thirteen (13) ERISA claims that involve one (1) of the five (5) plans containing an unambiguous anti-assignment provision set forth herein are dismissed in their entirety with prejudice for failure to state a claim for relief; and (B) plaintiffs' remaining twelve (12) state law claims involving the SCEH Plan are dismissed in their entirety with prejudice, and (iv) the branch of defendants' motion seeking dismissal of plaintiffs' claims involving the FEHB Plan pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiffs' seven (7) remaining claims involving the FEHB Plan are dismissed in their entirety with prejudice for failure to state a claim for relief; (b) plaintiffs' objections to the Report are sustained to the extent that the Report is modified to indicate (i) that the total number of claims asserted in the amended complaint is nine hundred thirty-two (932), and (ii) that, for the reasons set forth herein and in the Report, only the thirty-seven (37) ERISA claims that are plausibly alleged to be exhausted in the amended complaint and not subject to one of the anti-assignment provisions set forth herein remain in this action, and that the remaining ERISA claims asserted in the amended complaint that are not now voluntarily withdrawn by plaintiffs or dismissed as barred by one of the anti-

30

assignment provisions set forth herein are dismissed in their entirety with prejudice for failure to exhaust administrative remedies; (c) plaintiffs' remaining objections are overruled and the Report is otherwise accepted, as modified herein; and, (d) for the reasons set forth herein and in the Report, the branches of defendants' motion seeking to dismiss plaintiffs' ERISA claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies are granted to the extent that, with the exception of the thirty-seven (37) ERISA claims plausibly alleged to be exhausted in the amended complaint set forth herein; the thirteen (13) ERISA claims containing one (1) of the unambiguous anti-assignment provisions set forth herein that are dismissed for failure to state a claim for relief; and the ERISA claims that plaintiffs now voluntarily withdraw from this action,  plaintiffs' ERISA claims are dismissed in their entirety with prejudice for failure to exhaust administrative remedies.

SO ORDERED.

_____/s/_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 16, 2017
      Central Islip, New York